Good morning. And may it please the Court, I am Michael Anderson for the United Art Workers. There are two arbitrator acts that are at issue at this case. On June 29th of 2018, the arbitrator issued a merits award, which in the Union's view then and now was an unambiguous victory for the Union. The Union does not seek to vacate a word of the June 29th award. In fact, that award is the cornerstone of our case because we are defending the sanctity of the arbitrator's June 29th merits award against his apparently inconsistent remedy determination, which was made in a September 13th email. And because the Union filed its suit to vacate within 90 days of the September 13th email, the suit was timely. And that is the only issue before the Court today. We recognize that on the merits, the standard of review is properly deferential. As a Union advocate and as a major union, the UAW is normally in a position of insisting on the strength of the deference to the arbitrator, and we do recognize that. Didn't the arbitrator, though, confirm his understanding of the June award in August? I mean, didn't, in other words, if there was a later award, wasn't it the August award where the arbitrator said, no, the company did exactly what I told them to do? And at that point, shouldn't you have been on notice that you perhaps misunderstood the June award? No, but the August 24th email was issued before the Union had a chance to weigh in. And the Union representative said, wait a second, hold off until we can give you our brief. But the arbitrator had already explained at that point that everything that I said in my order, the company has done. I mean, I understand there was additional briefing, but to the extent there was ambiguity in your mind at that point, doesn't the clock run at the very latest in August? The August email was not finalized until September 13th when the arbitrator had finally considered all the... What does that mean, it wasn't finalized? Because when the arbitrator issued his August 24th email,  and the Union asked, can you hold off on making this judgment until we give you the brief? So the September 13th email is the final award. That was the moment that the Union was... Well, but wasn't that email, wasn't the September one basically saying just the train had complied and that the arbitrator was ending his jurisdiction? I mean... Correct, correct. As of September 13th, that's true. But if parties are required to hedge against the risk that an arbitrator is going to deny their position on the remedy, then what's going to have to happen in both labor and commercial arbitrations is that parties who think they've won an award, as the Union did on June 29th, are going to have to file a protective action to confirm their understanding of that award and to vacate all other understandings before the arbitrator even rules on the remedial issue. For instance, if the Union had filed a lawsuit in this case on July 1st, right after the June 29th award, it wouldn't have been an action to vacate, it would have been an action to confirm because the Union thought it had won and that action would have been asking the district court to do what June 29th award apparently said, which was to make all employees whole for the full allowance of vacation pay. Now, can we talk a little bit about the merits? I just want to make sure I understand. So, this was 2017, right? Right. So, anybody who had been working through calendar year 2016 was entitled to a certain number of weeks of vacation they could take in 2017, right? Correct. And did the Union, I mean, excuse me, did all the employees either take that vacation or get paid for it? As of the end of 2016, yes, but there's another issue about whether they're entitled to a payout of the vacation pay that they earned in 2017. Okay, no, I understand that. So, 2016, anything they earned in 2016 is not an issue in this case or the arbitration. Well, I mean, to the extent that there were three employees who were entitled to bumps up because they reached milestones, those three employees got the checks they needed. This case is about whether employees throughout the plant are entitled to any money for the time that they accrued toward vacation pay in 2017. Okay, and so, is it the Union's position that they get a pro rata computation from January 1 to the date of closure, or is it your position they get a whole year's vacation? It's both. It's both, that they get a pro rata and that they get the full amount all the way through the end of 2017. Why would they get both? Because under the contract, we would argue that the vacation pay that they would have been paid but for the plant closing would go all the way through the end of the year. I can understand that argument, but why would they also get the pro rata in addition to that? Well, no, I'm talking about two different segments. We wouldn't get duplicative payment, but they would certainly be entitled to the amount covering the time worked through January through the plant closing, but the Union also has the claim for the vacation pay running through the end of the year. Okay, and so, it was your view that the arbitrator said, yes, you're right, you get paid through the end of the year regardless of when you're terminated. And did the Union, I mean, excuse me, did the company pay any vacation pay for 2017? My client's understanding was that there was no payment of any vacation pay either from January through April or for the rest of the year. So, either pro rata or full year? Correct. That's our understanding. That's what's missing from the arbitrator's determination. Now, it's true that on September 13th, in the final email that the arbitrator expressed as his final act of jurisdiction, he said, I think that this complies with my June 29th award. But the issue here is not whether the arbitrator should be vacated or whether the Union is entitled to relief on the merits. The issue is whether the Union was entitled to treat September 13th as the date on which its 90 days began running. Let me ask you in your complaint, you have, you've claimed it in the alternative, and your first claim is to compel arbitration. Correct. Your second in the alternative is to do what I think you're asking now. Should it be the other way around? The reason for that is that even after September 13th, the arbitrator continued to receive, like, briefing from the UAW and responses from the company. And in the record, it's as late as November 1st, Appendix 248, where the arbitrator says to the company, I look forward to reading your response. So as of the time this lawsuit was filed, the Union was still holding its breath, waiting for the arbitrator to respond to these supplemental briefings. That's why the Union was waiting, because the arbitrator apparently was still taking more, more pleadings under submission. So then, that sort of cuts against your argument as to September 13th being the final, the final word, if you're. That is the earliest moment at which it can be said that the arbitrator declared, this is my final award. Because he said, I no longer have jurisdiction. Are you hanging your hat on that phrase? Yes. Yes. Now, it may have been later. We would argue that the arbitrator would have had the authority to pick up even later after September 13th. But that's not really before. That's not what's at stake here. So if it's September 13th, all you want is a remand. I mean, this motion to compel and all of that is just not an issue. We're not asking the court to change arbitrators or to substitute its judgment for the arbitrator. Or to compel arbitration, if it's. We're just asking the court to send this, remand this back to the arbitrator to explain the apparent inconsistency. That's what we're asking for on the merits. But what, but you're appealing the time bar, right? Correct. To us. Correct. For us, all you're asking for, I think, if I understand, is you want us to say no, this was timely, and just send it back. It is for Judge Holmes on remand to decide whether, in fact, we are entitled to a vacation and a remand. And in that situation, this motion to compel would just be an alternative that just wouldn't be addressed. That just drops out of the case. Exactly. And just to be clear, the court's finality rule that's expressed in Peaveley Sheet Metal and SBC Communications, that the time to seek judicial review of an arbitration award runs from the arbitrator's final act resolving a remedy dispute. It's not just for the solicitude of the parties. It's to prevent the parties from being forced into court prematurely while the arbitrator still has jurisdiction to deal with the dispute. If the union had sued on July 1st, we would have been suing to confirm the arbitration award based on our understanding that it covered all 200 employees. And the company would have had a legitimate and powerful response at that point to say, hey, wait a minute, the arbitrator reserved jurisdiction to decide this question. You should take your claim to the arbitrator and not to the district court. That would have been a correct argument, and that's exactly what the union did. The union should not now be punished for it by a rule that suddenly backdates the accrual of the cause of action, not from when the arbitrator resolved the remedy dispute, but all the way back to the merits award, which we thought we had won. Thank you. Thank you. Mr. Parker? May it please the court, Tally Parker, counsel for the affilee, Train, U.S. Inc. I know it's not a key issue, but would you quickly address the merits and what, from the company's perspective, what benefits were paid under the arbitration award? Yes, Your Honor. So, Train pays out vacation a year, or awards employees vacations essentially based on their prior year, at the end of the prior year. So, for example, here, when employees started out January 1 of 2017, the year that the plant closed, they were awarded vacation based on their seniority and years of service at the end of December 31, 2016. Okay? So, were the bulk of the employees paid 2017 vacation time? Yes, they were. So, they were paid vacation time that they had earned at the end of 2016, yes. That was payable in 2017? Correct. Now, there were these three other employees that fell into a different category. Right. So, for example, Your Honor, if you had been with the company long enough, say you start out and you get three weeks of vacation pay in 2017, and you hadn't used a day of it. When the plant closed and you were laid off in April, or if you were laid off in July, you would have been paid out in full for those weeks of vacation. So, from the company's perspective, is the union actually seeking 2018? They are. They are seeking vacation pay that would have been earned throughout 2017 that would have been issued to those members January 1 of 2018. I think you've cleared up my confusion. So, thank you. Yeah. And it's transposition they weren't entitled to any vacation pay regardless of how long they worked in 2017? Transposition, Your Honor, was that they should be paid out, that which had been granted to them at the start of the year, and then Trane said that you weren't entitled to anything else, correct. Trane then interpreted the arbitration award, and the arbitrator confirmed that if, for example, you had a milestone anniversary date that occurred after the plant closing in 2017. So, if, for example, you had worked for the company for 29 years, but if you worked there 30 years, you would get four weeks instead of three weeks vacation. If your 30th year anniversary date fell after the plant closure, the arbitrator said, you've got to give that person an additional week of pay. So, that's what Trane did. Trane went back, looked at its records, found out which employees would have had milestone anniversary dates after the plant closure date. There were three such employees, and it paid out an additional week of vacation pay to those three employees. And that is what... Well, if that's the position of Trane, and I understand the union's position is alternative. Either they get pro rata, or they get the full year, right? I'm not quite sure I understand the union's position, but I think what I hear the union advocating for is they should be paid out in full the vacation that was granted to them at the beginning of 2017, and then that they should be paid out in full the vacation that had the plant not closed, and they worked throughout the end of 2017 that they would have got at the beginning of 2018. Or, alternatively, at least get pro rata for the four months they did work. Perhaps. But I think their argument, though, is they would get the full year. But if that... Assuming that's the union's position, I don't read anything in the arbitrator's decision where he addresses that issue. Well, the arbitrator's... Under your interpretation of the arbitration award, he just ignored that issue, then. Well, we would say he didn't, John. We would say, if you actually look at his award, the actual remedy is that all employees, and the award is at the record at AP 150 to 167. He says, I believe, on the last page, all employees shall be made whole for the full allowance of vacation pay for which they would have qualified for in 2017, which we say would have been that which was granted to them at the beginning of the year, according to the amount of their seniority. And we read that to mean that if they would have gotten additional pay that year due to their seniority, then that's got to be paid to them. But it seems to me that's a circular argument, because all he's saying is that you get paid what you're entitled to in 2017. And you say they're not entitled to anything. Union says we're entitled to either a full year, or at least pro rata. And so how do we know what they're entitled to in 2017? Well, you're right. It was our position they weren't entitled to anything else. The union says they get that full year. The arbitrator came in and said, no, they do get something more. He found for the union. And the way his award was written, the way it was construed, and the way he clarified it was that that meant anybody with a milestone anniversary date post-plant closing, they'd get an additional week of pay. Well, then if he had to clarify the award, doesn't that undercut your argument that the statute of limitations ran from June 29? Shouldn't it run from the date of clarification? I don't think so. If there's any ambiguity? I don't think so. But if you were to take that position, as I think as Judge Coggs pointed out earlier, the arbitrator clarified his award on August 24th. And August 24th was 108 days before this suit was filed. So that was when the clarification first was brought to the union's attention. But what about the offer then to submit briefs? I mean, doesn't that at least arguably reopen? In other words, he clarified the award or confirmed the award and then said, look, I'll take additional argument on it. I mean, doesn't that cut against you? I frankly don't know why the arbitrator asked for additional briefs. That does obviously result in the arbitrator then issuing a second pronouncement. I mean, if it's a simple interpretation of what the arbitrator awarded initially, you know, what good are briefs on that particular issue? I don't know, Your Honor, because when the arbitrator made his pronouncement on August 24th, earlier that day, there was supposed to be a conference call that day. And that day, my colleague who represented Trane in the arbitration proceeding, he sent a letter to the arbitrator setting forth the party's disagreement and why Trane thought that it had complied with the award. The arbitrator, upon reading our briefing, the union had not submitted anything, but upon reading our briefing said, no need to have a conference call. I've read your respective positions. Trane, you complied with the award. And he actually, in his email that day, he concluded it by saying, best wishes to both you and your colleagues. So at that point, it looks like the matter is over. But then they do say, we want to submit additional briefing. And that does, I agree, complicate the issue somewhat. So do you agree that the June award was ambiguous? No, we do not. No. I mean, we take the position that ours is the only rightful interpretation. The arbitrator has, of course, agreed with it. They're the only ones advocating the position that they are in this matter. So we say no. That's why we advocate that the June 29, 2018 award issuance date is the date that the award, or is the date that the 90-day limitations period should have ran. But if you were to find that that is not the date, there really are only three other options. Two of them would still be outside the limitations. One would not. The second potential option would be when Trane paid these employees the additional weeks. And the reason I make that point, Your Honors, is because the arbitrator here, when he retained jurisdiction in the award, he says, I'm retaining jurisdiction until the terms of the award are met. Unlike in the cases that my opponent cited in reference, in those cases the arbitrators retained jurisdiction to help sort out the remedy because the arbitrators left it to the parties to come up with a remedy. Here, the arbitrator just said, I'm retaining it until the award is met. So a second possible option for the limitations period to run is the date Trane paid those individuals the additional week of vacation pay, which the arbitrator later said was all you had to do. And if you use that date, then this lawsuit was filed 140 days from that date. It would still be untimely. Well, I'm sorry. I'm a little confused how you could have an act of the companies being the point at which the statute would run, the time frame would run. It seems like it would have to be, that's sort of adding one more step. You've got the initial award and then the two memos all coming from the arbitrator. But I'm not, I don't know how you can, I don't know how, that seems a bit unwieldy. How about that? Because, Your Honor, we would say number one, the award and the only award. The parties agree it's the only award. But that is when the period ran, okay? But the arbitrator does complicate things there because he could have simply just issued the award and that had been it. But instead, he concluded his award by saying, I retain jurisdiction until the terms of the award are met. And so my argument there is, once we paid the people and we know that that's what he said he had ordered them to do, that's when the terms of the award were met. That's another possible date. So that's date two. Lawsuit would still be untimely. Well, let's assume for a moment we disagree with you on the statute. That the operative date is when he said this is done. Where does that leave us? If you were to find that the district court erred in dismissing the lawsuit on limitations ground, then the lawsuit would be remanded to the district court. At which point, I guess depending on how you ruled, there may be other potential 12B issues that could be raised. Because, for example, Your Honor, if you remanded it and it was, if you remanded it and in your award you say that the June 29th date is the award, although it was later clarified, if you say that, then their motion to vacate is untimely because the award would still be this June 29th date and the Arkansas statute of limitations says it's got to be 29 dates from the date of the award, not, as they want to frame the later pronouncement, a compliance decision. So we might very well argue that the lawsuit is yet again untimely. If we didn't take that approach, then I think it would be in front of the district court. The parties would be advocating on whether or not the award is ambiguous. And we would say it's not because the arbitrator has opined two times. If they convinced the court that the award was ambiguous, then I think it would be remanded to the arbitrator to yet again weigh in on what it was he was ordering to do. Well, how would you litigate a compliance issue? Let's assume you go through the arbitration. There's an award made, and both sides think they won. And assuming that it's not a frivolous argument, both sides think they won. And you say we owe you X number of dollars, we paid it. And the union says, no, you owe multiples of X number of dollars. Let's go back to the arbitrator and have him clarify it. And he clarifies it and says, yeah, no, the company's right, you paid everything. Your position is that there's no way to litigate that. Is that correct? They had to know at the time they thought they won that they really hadn't won. Well, again, I would, no, not necessarily, Your Honor. Because if you go with their position that theirs is the only reasonable interpretation here, then the case that they cited in their 28- Well, I'm not saying theirs is the only reasonable interpretation. I'm saying that suppose there's two reasonable interpretations of the arbitration award, and you go back to the arbitrator and the arbitrator says, has to pick. He said, well, what I really meant was the company's position, which is what happened in this case. You're saying they can't litigate that at that point. They had to know at the very beginning that they lost. Well, I mean, I guess that's a situation. I think we, a different situation that we have here. I haven't thought about that, exactly what would happen there. I haven't quite thought of what would happen in that situation, Your Honor. But I don't think that they would, if the arbitrator continued to exercise jurisdiction, I guess, and if he later said that the, or if the parties later disagreed, I guess one option could be that they could file a motion, maybe perhaps to confirm the award, because that lawsuit wouldn't be untimely. As the union has noted, the statute of limitations there is 10 years, and perhaps somehow get it in front of the court that way. I don't know. I don't think the parties would be without a remedy, though. I think there's some way they could get it before the court. If there's anything else from Your Honors. Thank you very much. Thank you. Your Honor, I might ask for just 30 seconds. You may. Yes. And you may have it. Just to give a record site to clean up Judge Cobes' question about August 24th. Immediately after that first email sent by the arbitrator, the arbitrator sent a second email dated the same day. And this is Appendix 217, where the arbitrator says to the parties, I just received a call from Mike, who was the union representative, who was on the road. He requested time to prepare a brief in response to Chris's, the company's brief. I granted his request and gave him until next Thursday, August 30th. So our telephonic conversation for this afternoon is canceled, and I will read what Mike, the union representative, submits. I will consider both sets of briefs and make a final determination soon after that time. And the next email after that is September 13th. And that's why we are within 90 days of the arbitrator's final act. And simply to point out, if the arbitrator had ruled for the union, as we think he should have, nobody disputes that the company would have 90 days from that date to seek to vacate that in court. And the court should not create a schizophrenic law of accrual, where the accrual of the right to bring an action for judicial review depends on which party the arbitrator rules for. If the arbitrator rules for the company, that ruling is the moment of the arbitrator's final act of remedial jurisdiction, even though he's saying no further remedy is necessary. Otherwise, you have a situation where parties find that their 90 days has already run, because there's no law that requires arbitrators to make those remedial determinations within 90 days of the merits award. So for all the reasons given in this court's decisions in Peabody Sheet Metal, the court should tack September 13th as the date of accrual. Everything else will be for the district court on remand. Thank you. Thanks to both parties for your argument and briefing. We'll take